IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VICTORIA LEDBETTER,

    Plaintiff,

       v.

CITY OF KENNESAW, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:14-CV-3704-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Motion for Summary Judgment of the City of Kennesaw and William Westenberger [Doc. 44] and the Motion for Summary Judgment of Matthew Wilson, Mark Webster, and James Scollan [Doc. 45]. For the reasons stated below, the City of Kennesaw and William Westenberger's Motion for Summary Judgment is GRANTED and Matthew Wilson, Mark Webster, and James Scollan's Motion for Summary Judgment is GRANTED in part and DENIED in part.

### I. Background

On the evening of November 28, 2012, at approximately 11:57 P.M., Officers Matthew Wilson and Mark Webster of the City of Kennesaw Police Department were

T:\ORDERS\14\Ledbetter\msjtwt.wpd

dispatched to the area of Park Drive in Kennesaw to respond to a complaint of a drunk man causing a disturbance in a driveway.[1] Officer Webster was the first officer on scene.[2] While in his police vehicle, Officer Webster could hear a male and female yelling at each other.[3] Upon exiting his vehicle, he noticed a female, who he identified later as Victoria Ledbetter, the Plaintiff here, yelling from the window at a male subject, telling that man to get inside the house.[4] The man was eventually identified as Kyle Long, the Plaintiff's son.[5]  Officer Webster issued verbal commands to Mr. Long to come speak with him.[6] Once Officer Webster caught up to Mr. Long, he escorted him back to the police vehicle and away from the Plaintiff.[7]

Officer Wilson was the second officer on scene.[8] When he arrived, he noticed Officer Webster speaking with Mr. Long, who clearly appeared to be intoxicated.[9]

---

[1]     Defs.' Statement of Facts ¶ 5.

[2]     Id.

[3]     Id. ¶ 6.

[4]     Id.

[5]     Id. ¶ 7.

[6]     Id.

[7]     Id. ¶ 8.

[8]     Id. ¶ 9.

[9]     Id.

Officer Wilson approached Officer Webster to assist him in placing Mr. Long under arrest and patting him down.[10] While Officers Wilson and Webster were dealing with Mr. Long, they could still hear the Plaintiff yelling from the window.[11] The officers claim that the Plaintiff was cursing.[12] The Plaintiff claims that she was not cursing.[13] The Plaintiff began to approach the officers.[14] The officers claim that the Plaintiff approached them aggressively, while cursing, and refused to comply with commands to return to the house.[15] The Plaintiff agrees that she approached the officers, but states, as do several witnesses, that she did not approach aggressively and did not curse at the officers.[16]

Officer Webster states that when the Plaintiff was about eight to ten feet from him, he stopped dealing with Mr. Long and told the Plaintiff that he would count to three, after which, if she had not gone back inside of the house, he would take her to

---

[10]     Id. ¶ 10.

[11]     Id. ¶ 11.

[12]     Id.

[13]     Pl.'s Resp. to Defs.' Statement of Facts ¶ 11.

[14]     Defs.' Statement of Facts ¶ 12.

[15]     Id.

[16]     Pl.'s Resp. to Defs.' Statement of Facts ¶ 12.

jail.[17] Officer Webster further states that he then counted to three at a normal pace, but the Plaintiff continued to advance toward him in a threatening manner and refused to comply with his orders, so he made the decision to arrest her for misdemeanor obstruction.[18] Officer Webster states that when he told the Plaintiff she was under arrest, she immediately turned away and started to run toward her home.[19] At this point, Officer Webster states that he caught up to the Plaintiff, grabbed one of her arms, and pulled her to the ground using a circular motion.[20] The Plaintiff fell to the ground and Officer Webster ordered her to roll over and put her hands behind her back, but instead she physically resisted and yelled "get the fuck off me, let me go!"[21] Sometime while the Plaintiff and Officer Webster were on the ground, Officer Scollan arrived on scene.[22] According to Officers Webster and Scollan, the Plaintiff continued to resist arrest.[23] Officer Scollan eventually came to assist Officer Webster, and the

---

[17]    Defs.' Statement of Facts ¶ 14.

[18]    Id. ¶¶ 14-15.

[19]    Id. ¶ 16.

[20]    Id. ¶ 17.

[21]    Id.

[22]    Id. ¶ 18.

[23]    Id. ¶ 19.

two were able to roll the Plaintiff over and handcuff her.[24] After handcuffing the Plaintiff, Officers Webster and Scollan gave instructions for her to stand up, but she refused, instead kicking at the officers.[25] Officers Scollan and Webster lifted the Plaintiff off the ground and began escorting her to Officer Webster's police vehicle; they state that the Plaintiff was screaming, kicking, and pulling away to the point that they practically had to carry her.[26] When they reached the front of the police vehicle, Officer Webster wanted to pat the Plaintiff down, but she resisted, pushing away and trying to turn around.[27] While Officer Webster was using a soft hands technique to push the Plaintiff toward the car, he claims she unexpectedly lost her footing and fell into the hood of the car, hitting her head.[28] Officer Webster states that he helped the Plaintiff to her feet and placed her in the rear of his police vehicle, noting that she did not look injured to him.[29]

---

[24] Id.

[25] Id. ¶ 20.

[26] Id.

[27] Id. ¶¶ 21-22.

[28] Id. ¶ 22.

[29] Id. ¶ 23.

The Plaintiff disputes essentially the entire account of events given by the officers. She states that she attempted to explain to Officer Webster that her son was not the subject of the 911 call and that the disturbance was next door, but that Officer Webster simply replied by saying he was going to count to three.[30] The Plaintiff then immediately stepped back and put her hands above her head.[31] She states that Officer Webster then rapidly counted to three, grabbed her, and forcibly threw her on her back on the concrete driveway.[32] The Plaintiff offered no resistance to Officer Webster.[33] While the Plaintiff was on the ground, Officer Webster handcuffed her hands behind her back.[34] The officers then dragged the Plaintiff backwards by the handcuffs, in such a way that her butt was dragging on the ground.[35] This caused her pajama pants to fall down.[36] She kept trying to pull them up, but had difficulty doing so due to the handcuffs.[37] One of the officers then said "let's pick her up," and the officers picked

---

[30]   Pl.'s Resp. to Defs.' Statement of Facts ¶¶ 14-16.

[31]   Id. ¶ 16.

[32]   Id.

[33]   Id. ¶ 16.

[34]   Id. ¶¶ 19-20.

[35]   Id. ¶ 20.

[36]   Id.

[37]   Id.

up the Plaintiff by her armpits and escorted her to the police vehicle in a semi-upright position.[38] The Plaintiff states that she was fully cooperative during this whole process, did not act aggressively, flee from the officers, or curse at the officers.[39] Once the Plaintiff and the officers got to the police vehicle, Officer Webster bent the Plaintiff over the hood of the car with her hands still handcuffed behind her back.[40] At this point, the Plaintiff began crying and asked Officer Webster  why he was doing this to her when she did not do anything wrong.[41] Officer Webster responded by slamming the Plaintiff's head into the hood of the police vehicle twice.[42] Each time the Plaintiff's head hit the hood, it made a loud banging noise, which could be heard as far away as the next door neighbor's residence.[43] The Plaintiff's version of events is corroborated by Mr. Long, her husband Arthur Johnston, and her neighbors William Lake, Nicholas Lake, and Zachery Lake.[44]   After Officer Webster slammed the

---

[38]   Id.

[39]   Id.

[40]   Id. ¶ 21.

[41]   Id.

[42]   Id.

[43]   Id.

[44]   Id. ¶¶ 12-23.

Plaintiff's head into the hood of the car, the officers high-fived each other.[45] From this incident, the Plaintiff suffered a concussion and injuries to her wrists.[46]

It is undisputed that following the incident, the Plaintiff and Mr. Long were both transported to the Kennesaw Police Department for booking.[47] It is also undisputed that Officer Wilson never touched the Plaintiff and could not observe what was happening while the Plaintiff's head hit the police vehicle.[48] Additionally, Chief of Police William Westenberger was not present during this incident.[49] Based on the incident, the Plaintiff brought various state and federal claims against the City of Kennesaw, Chief of Police William Westenberger, Officer Wilson, Officer Webster, and Officer Scollan. The Defendants all move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and

---

[45]    Ledbetter Dep. at 113.

[46]    Id. at 100; Pl.'s Resp. to Wilson, Webster, and Scollan's Mot. for Summ. J., Ex. P-1.

[47]    Defs.' Statement of Facts ¶¶ 25-26.

[48]    Id. ¶¶ 24, 34.

[49]    Id. ¶ 45.

that the movant is entitled to judgment as a matter of law.[50] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[51] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[52] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[53] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[54]

## III. Discussion

### A. City of Kennesaw and William Westenberger

The City of Kennesaw and the Kennesaw Chief of Police, William Westenberger, move for summary judgment on the claims against them. The only claim against Kennesaw is a federal municipal liability claim. In order for a municipality to be held liable under § 1983, there must be some policy or custom of

---

[50]   FED. R. CIV. P. 56(a).

[51]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[52]   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[53]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[54]   Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

the municipality that violates the plaintiff's constitutional rights.[55] There is no evidence here of any policy or custom of Kennesaw that led to any constitutional violation. The motion for summary judgment on the claim against the City of Kennesaw should be granted.

Westenberger is the chief of police, or in other words, a supervising officer. In the Eleventh Circuit, "to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."[56] There is no evidence whatsoever that Westenberger was personally involved in any constitutional violation here. Nor is there any evidence of any causal connection between Westenberger's actions and any constitutional violation. He therefore cannot be held individually liable. Furthermore, the claims against Westenberger in his official capacity are essentially claims against Kennesaw. As discussed above, there is no evidence of any Kennesaw policy or custom that led to any constitutional violation here. The motion for summary judgment on the claims against Westenberger should be granted. Because this Court grants summary judgment

---

[55]   Monell v. Department of Social Servs. of N.Y., 436 U.S. 658, 690-91 (1978).

[56]   Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1047-48 (11th Cir. 2014).

on all claims against Westenberger and Kennesaw, the claims for attorney's fees and costs against those Defendants also fail.

### B. Officers Wilson, Webster, and Scollan

The individual officers involved in the incident, Wilson, Webster, and Scollan, move for summary judgment on the federal and state law claims against them. The Plaintiff's first claim against the officers is for excessive force under 42 U.S.C. § 1983. An excessive force claim brought under the Fourth Amendment is analyzed by determining whether the amount of force used was objectively reasonable.[57] The Supreme Court has held that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment."[58] It further noted that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that it necessary in a particular situation."[59] The Eleventh Circuit has found, however, that "gratuitous use of force when a criminal suspect is not resisting

---

[57]    Graham v. Connor, 490 U.S. 386, 396 (1989).

[58]    Id.

[59]    Id. at 396-97 (internal citation omitted).

arrest constitutes excessive force."[60] Additionally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance."[61]

Here, there are numerous genuine disputes of material fact that prohibit this Court from resolving the excessive force claim against Officers Webster and Scollan on summary judgment.  Specifically, the Plaintiff and the Defendants have diametrically opposed versions of the events that took place surrounding the Plaintiff's arrest. The Defendants claim that the Plaintiff was cursing and physically resisting arrest, that they used only the soft-hands force necessary to restrain her, and that she hit her head by falling into the hood of the police vehicle.[62] The Plaintiff and other bystander witnesses, however, claim that she was not cursing, was not resisting arrest, that Officer Webster threw her onto the ground, that Officers Webster and Scollan dragged her to the police vehicle while she was handcuffed, and that Officer Webster twice smashed her head into the hood of the police vehicle.[63] Taking the facts in the light most favorable to the Plaintiff, as the Court must on summary judgment,

---

[60]    Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008).

[61]    Id.

[62]    Defs.' Statement of Material Facts ¶¶ 13-23.

[63]    Pl.'s Resp. to Defs.' Statement of Material Facts ¶¶ 13-23.

there is a factual dispute about whether the Plaintiff was resisting arrest and whether the amount of force used by Officer Webster was objectively reasonable. If, as the Plaintiff and the witnesses claim, Officer Webster smashed the Plaintiff's head into the hood of the police vehicle while the Plaintiff was handcuffed and not resisting, that would be a gratuitous use of force, and therefore excessive under Hadley. Additionally, because Officer Scollan was potentially in a position to stop Officer Webster, a reasonable jury could find him liable for his nonfeasance under Hadley.

Officers Webster and Scollan claim that regardless of the factual dispute, they are entitled to qualified immunity on the excessive force claim. Qualified immunity shields officers from liability for civil damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[64] Given the factual dispute discussed above and the Eleventh Circuit precedent in Hadley, this Court cannot grant summary judgment to Officers Webster and Scollan on the basis of qualified immunity. If the Plaintiff's version of events is true, the officers violated clearly established law through gratuitous use of force. If the officers' version of events is true, they did not. Because the facts are disputed, Officer Webster and Officer Scollan's motion for summary judgment should be denied.

---

[64]     Hope v. Pelzer, 536 U.S. 730, 739 (2002).

Officer Wilson has a different argument as to why summary judgment should be granted on the claim against him. The Plaintiff admits that Officer Wilson never touched her.[65] She also admits that Officer Wilson could not see any of the interactions between Officers Webster and Scollan and herself.[66] Because the Plaintiff admits that Officer Wilson never touched her, the only theory on which an excessive force claim against him could be successful is a bystander theory. The bystander theory must fail, however, because Officer Wilson could not observe what was happening and therefore could not have taken any reasonable steps to prevent the use of any excessive force. The motion for summary judgment on the excessive force claim against Officer Wilson should be granted.

The officers also move for summary judgment on the state law claim for assault and battery against them, arguing that they are entitled to official immunity under Georgia law. "The making of a warrantless arrest for conduct occurring in an officer's presence is a discretionary act that will not give rise to personal liability unless the officer acted with actual malice or intent to cause injury."[67] Proof of actual malice or intent to cause injury is a high standard. Profanity, threats, and even slamming a

---

[65]    Defs.' Statement of Facts ¶ 34.

[66]    Id. ¶ 24.

[67]    Selvy v. Morrison, 292 Ga. App. 702, 704 (2008).

suspect's head against a police vehicle have been found by the Georgia Court of Appeals to be insufficient proof of actual malice.[68] Given the evidence here, the Court cannot find any evidence rising to the high standard set by the Georgia courts. First, as the Plaintiff admits that Officer Wilson never touched her, there is certainly no evidence of actual malice or intent to injure by him. As to Officers Webster and Scollan, given the holding of the Georgia Court of Appeals in Tittle that even slamming a suspect's head into a car is not enough to show actual malice, this Court finds that there is no evidence of actual malice from them either. The motion for summary judgment on the Georgia state law claim for assault and battery should be granted as to all three officers.

## IV. Conclusion

For the reasons stated above, the Motion for Summary Judgment of the City of Kennesaw and William Westenberger [Doc. 44] is GRANTED and the Motion for Summary Judgment of Matthew Wilson, Mark Webster, and James Scollan [Doc. 45] is GRANTED in part and DENIED in part. The Clerk is directed to terminate the City of Kennesaw, William Westenberger, and Matthew Wilson as parties.

---

[68]    Tittle v. Corso, 256 Ga. App. 859, 862-63 (2003).

SO ORDERED, this 11 day of May, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge